UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MALI MALKANDI | CASE NO. C12-00036 RSM |
| Petitioner, | ORDER ON MOTIONS |
| v. | |
| ANNE CORSANO, et al., | |
| Respondents. | |

## I. INTRODUCTION

This matter comes before the Court on the parties' cross-motions for summary judgment (Dkt. ## 18, 24). Petitioner filed this action for *de novo* review of the denial of her naturalization applications, pursuant to INA 310(c), 8 U.S.C. 1421(c) and INA 316(a), U.S.C. 1427. Dkt. # 1. USCIS denied Petitioner's naturalization applications on the basis that she lacked the required five years as a lawful permanent resident ("LPR"). Petitioner claims that she is a lawful permanent resident for the purposes of naturalization eligibility under INA 316, 8 U.S.C. §1427 and INA 318, U.S.C. §1429. Petitioner moves the Court to grant summary judgment, and thus reverse the U.S. Citizenship and Immigration Services ("USCIS") denial of her N-400

1  naturalization application and order her naturalization judicially or, in the alternative, order
2  USCIS to administratively naturalize her. Dkt. # 18. In response, the government filed a cross-
3  motion for summary judgment contending that Petitioner's application was properly denied by
4  USCIS on the basis that she did not meet the statutory requirements for naturalization. Dkt. # 24.
5  For the reasons that follow, the Court denies Petitioner's motion for summary judgment (Dkt. #
6  18) and grants the Respondent's cross-motion for summary judgment (Dkt. # 24).

## II. BACKGROUND

Ms. Malkandi was born in Iran and came to the U.S. from a refugee camp in Islamabad, Pakistan. She entered the United States and was accorded refugee status on June 23, 1998 with approval from the U.S. State Department and the United Nations. Her status was granted as a derivative applicant of her husband, Sam Malkandi. Her two children were also granted derivative refugee status based solely on Sam Malkandi's application. On December 22, 2000, Ms. Malkandi adjusted her status to a lawful permanent resident through the refugee status adjustment provision, INA Section 209(a), 8 USC 1159(a). Her permanent residence was effective *nunc pro tunc* back to her entry date of June 23, 1998. Dkt. # 1, p. 3.

Petitioner and her husband applied for naturalization on July 1, 2003. While their applications were pending, Mr. Malkandi was interviewed by the Federal Bureau of Investigations ("FBI"). During that interview, Mr. Malkandi admitted to lying on his refugee application. On August 1, 2005, USCIS denied Mr. Malkandi's naturalization application. The next day, removal proceedings were initiated against Mr. Malkandi based on his admission of fraud and misrepresentation in his refugee application.[1] As derivatives of that application, Ms.

---

[1] On September 30, 2004, Sam Malkandi was interviewed by the FBI. During that interview he testified that he had lied on the application for asylum which he submitted to the

1  Malkandi and her two children were also included in the removal proceeding. The Notice to

2  Appear ("NTA") stated that the false representations in the refugee application rendered the

3  family's refugee classification invalid pursuant to INA 237(a)(1)(A), 8 U.S.C. §1227(a)(1)(A).

4  The provision applies to inadmissible aliens who have procured entry into the United States by

5  fraud or willful misrepresentation of a material fact under INA 212(a)(6)(C)(i), 8 U.S.C. §1182

6  (a)(6)(C)(i). Dkt. # 1-6.

7  　　　　On August 25, 2005, Ms. Malkandi's naturalization application was denied on the basis

8  that she failed to establish that she had been lawfully admitted for permanent residence. USCIS

9  determined that Ms. Malkandi had not been lawfully admitted for permanent residence because

10  her derivative status was based on fraudulent circumstances and statements made by her

11  husband.

12  　　　　On February 11, 2006, Immigration Judge ("IJ") Kenneth Josephson found the family

13  "removable as charged," but granted asylum to Ms. Malkandi and her children. Dkt. # 1-2, p.3.

14  Petitioner's husband, Mr. Malkandi, whose case was consolidated with that of the Petitioner, was

15  found removable and was denied asylum.[2] In 2007, the Department of Homeland Security

16

17

18  United Nations, that he had never been arrested by the Iranian government, and that his first wife had committed suicide, but that her suicide was not a result of interrogations by the Iranian government. Dkt. #1-2, p. 2.

19  [2] The IJ found Sam Malkandi was ineligible for asylum, cancelation of removal, and Convention Against Torture ("CAT") relief because DHS was able to establish reasonable

20  grounds that Mr. Malkandi was a danger to the security of the United States.  DHS was unable to prove the alternative charge of engaging in terrorist activities.  The IJ found there was credible

21  evidence that Mr. Malkandi aided an al Queda operative, Salah Mohammed (aka "Khallad"), affiliated with Osama Bin Laden.  Mr. Malkandi allegedly contacted a medical clinic to secure a

22  letter Khallad needed to get a medical visa to travel to the United States.  Khallad was denied the visa and was apprehended abroad where he implicated Mr. Malkandi.  Khallad has been

23  connected to the African Embassy bombing, the attack on the U.S.S. Cole, and is believed to be one of the masterminds behind the attacks of September 11th. Mr. Malkandi's case was appealed

24  to the BIA who affirmed, and to the 9th circuit, who also affirmed. *See Malkandi v. Holder*, 576

1  ("DHS") *returned* Petitioner's I-551 Alien registration card ('green card'). In June 2007,

2  Petitioner and her daughter Nicole re-applied for naturalization. Their applications were legally

3  identical. Both were derivatives of Sam Malkandi's initial refugee application. USCIS granted

4  Nicole's application and she was naturalized on July 4, 2008. As to Ms. Malkandi's application,

5  USCIS was silent.

6       On September 11, 2009, over one year after Nicole was naturalized, USCIS denied

7  Petitioner's application on the basis that she lacked the required five years as a lawful permanent

8  resident. It reasoned that because the IJ found her removable as charged, her LPR status had been

9  terminated pursuant to 8 CFR 1.1(p).[3]

10       In October 2009, Ms. Malkandi filed an appeal pursuant to INA §336, 8 U.S.C. §1447,

11  which was affirmed on October 17, 2011 following a hearing. On January 6, 2012, Ms. Malkandi

12  filed a Petition for Review of Denial of Application for Naturalization and Request for *de novo*

13  review with this Court pursuant to 8 U.S.C. §1421(c). Dkt. # 1. Ms. Malkandi then filed a motion

14  for summary judgment (Dkt. # 18) and Respondents filed a cross-motion for summary judgment.

15  Dkt. # 24.

16                           **III. DISCUSSION**

17  **A. Standard of Review**

18       Summary judgment is proper where "the movant shows that there is no genuine dispute

19  as to any material fact and the movant is entitled to judgment as a matter of law". Fed.R.Civ.P.

20  ───────────────────────────

21  F.3d 906 (9th Cir. 2009). The petitioner alleges that her case has been tainted by her husband's
    alleged associations, and that the denial of her naturalization is arbitrary and capricious.

22

23       [3] Nicole Malkandi's application was legally identical to that of Petitioner with regard to
    the LPR issue as they both entered the country as derivate refugees under Mr. Malkandi's
    fraudulent application. Dkt. # 19-1. The government recognizes the contradiction and points out

24  that Petitioner's daughter was "naturalized in error." Dkt. # 1-2, p. 6.

ORDER ON MOTIONS - 4

56(a). When the court considers a motion for summary judgment, it must assume the facts asserted by the plaintiff are true. *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). If the moving party carries its burden of showing there is no genuine issue of material fact, the non-moving party must present, by affidavits, depositions, answers to interrogatories, or other admissions on file that there are specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**B. Jurisdiction**

The Respondent correctly argues that this Court lacks jurisdiction to consider Petitioner's claims regarding her removal order. Dkt. #24, p. 17. Section 106(a)(iii) of the REAL ID Act, codified at 8 U.S.C. § 1252(a)(5), states:

> … [A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter...

This Court, however, has jurisdiction to review the denial of Petitioner's naturalization applications pursuant to INA §310(c), 8 U.S.C. §1421(c). The INA grants the Attorney General the authority to naturalize persons as citizens of the United States. 8 U.S.C. § 1421(a). A person seeking naturalization must file an N–400 application and undergo an examination by USCIS. 8 U.S.C. §§ 1445, 1446. USCIS then makes a determination based on the application and the examination. If USCIS denies the application for naturalization, the applicant may request an N–336 hearing on denial before an immigration officer. 8 U.S.C. § 1447(a). If, after conducting a hearing, USCIS continues to deny the application for naturalization, the applicant may seek review in the United States District Court. 8 U.S.C. § 1421(c). A district court reviews a USCIS decision *de novo*, making its own findings of fact and conclusions of law. *Id.* "Accordingly, *even if the INS is allowed to make the initial decision on a naturalization application, the district*


*court has the final word* and does not defer to any of the INS's findings or conclusions." *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (emphasis original).

Petitioner has properly exhausted her administrative remedies by requesting and attending an administrative hearing before a USCIS officer pursuant to 8 C.F.R. §336.2. Petitioner filed the Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings on October 8, 2009, in response to the September 11, 2009 denial of her application for naturalization. On October 17, 2011, USCIS Field Officer Director Linda M. Dougherty issued a decision affirming the denial of Petitioner's naturalization application based on the finding that she is not a lawful permanent resident. Dkt. # 24, p. 7. Petitioner is therefore entitled to *de novo* review of the denial of her naturalization application by this Court.

The parties have not asked the Court to revisit the factual determinations involved in the adjudication of Petitioner's naturalization applications. All exhibits are government documents that are uncontested and not in dispute. The Court therefore need not proceed with an evidentiary hearing or otherwise make additional findings of fact to address the legal question at issue.

**C.  Petition for Naturalization**

The only issue before the Court is whether Petitioner was lawfully admitted as a permanent resident for purposes of meeting the statutory requirements of naturalization. The burden to establish eligibility for naturalization is on the applicant. *See* 8 C.F.R. § 316.2(b) (requiring that the naturalization applicant "shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization, including that the applicant was lawfully admitted as a permanent resident to the United States, in accordance with the immigration laws in effect at the time of the applicant's initial entry or any subsequent reentry"); *I.N.S. v. Pangilinan*, 486 U.S. 875, 886 (1988) ("it has been

1 universally accepted that the burden is on the alien applicant to show his eligibility for

2 citizenship in every respect") (internal citation omitted).

3       The INA identifies three general requirements for obtaining citizenship through

4 naturalization, specifying that "[n]o person ... shall be naturalized" unless the applicant satisfies

5 the following criteria:

> (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years ...;
> (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and
> (3) during all the periods referred to in this subsection has been and still is a person of good moral character...

10 8 U.S.C. § 1427(a). Furthermore, 8 C.F.R. § 316.2(a)(1)-(7) states, in relevant part, that "to be

11 eligible for naturalization, an alien must establish that he or she:

> (1) Is at least 18 years of age;
> (2) Has been lawfully admitted as a permanent resident of the United States;
> (3) Has resided continuously within the United States, as defined under § 316.5, for a period of at least five years after having been lawfully admitted for permanent residence;
> (4) Has been physically present in the United States for at least 30 months of the five years preceding the date of filing the application;
> * * *
> (6) Has resided continuously within the United States from the date of application for naturalization up to the time of admission to citizenship;
> (7) For all relevant time periods under this paragraph, has been and continues to be a person of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States ...

20 *Id.*

21       Here, the only naturalization requirement at issue is that of lawful admission to the

22 United States as a permanent resident. The INA provides that "no person shall be naturalized

23 unless he has been *lawfully admitted to the United States for permanent residence in accordance*

24

ORDER ON MOTIONS - 7

*with all applicable provisions of this chapter.*" 8 U.S.C. § 1429 (emphasis added). The statute defines the term "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

Petitioner claims she is a lawful permanent resident for the purposes of naturalization eligibility under INA §316, 8 U.S.C. § 1427 and INA §318, 8 U.S.C. §1429. The Respondent, however, contends that Petitioner was not entitled to lawful permanent status at the time she obtained it and thus her LPR status was void *ab initio*. It is undisputed that Petitioner obtained LPR status after adjusting her refugee status and that her refugee status derived solely from her husband's application. Petitioner argues that (1) her refugee admission was lawful and that she is an LPR; (2) she was charged in error in removal proceedings; (3) the charging statute does not apply to refugee adjustment; (4) she is statutorily exempt from the charge of removability; (5) the IJ had no authority to invalidate her refugee admission; and (6) her LPR status was not terminated in removal proceedings. Dkt. # 18, p. 3

As discussed above, this Court lacks jurisdiction over claims that either challenge an order of removability or are "inextricably linked" to an order of removability. *See Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082 (9th Cir. 2010). And here, the majority of Petitioner's contentions exceed the Court's limited jurisdiction. All issues related to the procedural and statutory deficiencies of Petitioner's charge of inadmissibility or error associated with her removal hearings and status adjustment are improperly before the Court. Petitioner was denied naturalization on the grounds that she was not lawfully admitted for permanent residence. The issue of lawful admission is separate and distinct from the status accorded Petitioner at any point after her entry into the country. Whether Petitioner was

improperly charged or whether her status changed as a result of removal proceedings are not issues the Court can address because such issues are inextricably linked with the order of removal. The Court may only review whether Petitioner was lawfully admitted to the United States for permanent residence. As to that narrow question, the *Monet* line of cases controls.

The phrase "lawfully admitted for permanent residence" is statutorily defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. §1101(a)(20). The Board of Immigration Appeals ("BIA") stated that individuals "lawfully admitted for permanent residence" are not lawfully admitted if they obtained their permanent resident status by fraud, or had otherwise not been entitled to it. *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003) (citing *Monet v. INS*, 791 F.2d 752, 754 (9th Cir. 1986)). In *Koloamatangi*, the BIA found that even though the petitioner was facially and procedurally a permanent resident, he was not in a legal sense lawfully admitted for permanent residence because his status was acquired through a fraudulent marriage to a U.S. citizen. *Id*. The court determined that when admission and resident status is procured by fraud, LPR status is void *ab initio* when the fraud is discovered after LPR status was granted. *See id*.

In *Monet*, the Ninth Circuit noted that "lawfully" "denotes compliance with substantive legal requirements, not mere procedural regularity." *Monet,* 791 F.2d at 753 (quotation omitted). There the court found that because Monet concealed his prior drug conviction in obtaining his LPR status, he had not been lawfully accorded such status. *Id*. at 754. The Ninth Circuit has since extended *Monet* to cases where the individual obtained the immigration benefit mistakenly and where the individual obtained an immigration benefit as a derivative of an application procured by fraud. *See Segura v. Holder*, 605 F.3d 1063, 1067 (9th Cir. 2010) (finding when

admission for permanent residence was erroneously granted, the individual was not lawfully admitted); *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1216 (9th Cir. 2010) (stating the South Korean natives were not "lawfully admitted" because admission derived from their mother's fraudulent application).

The crux of Petitioner's argument is that she was admitted to the United States as a refugee, adjusted her status to LPR, and that neither her refugee nor LPR status was effectively revoked or terminated by any subsequent immigration proceeding. All of which may be procedurally correct. What she cannot prove, but must, is that her entry into the U.S. was lawful. She was admitted into the U.S. under her husband's application. Ms. Malkandi never applied for entry on her own application and thus her classification is entirely dependent on that of her husband. Petitioner's contention that refugees are afforded special statutory status does not change the analysis. The fact that refugees may be exempted from a charge of inadmissibility under INA 212(a)(7)(A)(i)(I) does not affect this Court's determination about whether Ms. Malkandi was lawfully admitted at the time of entry.

Moreover, the fact that the fraud was committed by Petitioner's husband and not her is irrelevant because Petitioner's refugee status was entirely dependent on her husband's refugee status. 8 C.F.R. § 207.7(a); 8 U.S.C. §1157 (c)(2)(A); *Santiago v. Immigration & Naturalization Serv.*, 526 F.2d 488, 491 (9th Cir. 1975) ("If Congress had wished to equate derivative preferences with actual preferences the words 'accompanying, or following to join' would be absent from this statute"). Petitioner derived her refugee status from her husband, the principal refugee, making the lawfulness of her admission dependent upon the lawfulness of her husband's application. Petitioner's husband obtained his refugee status by fraud, which renders his and Ms. Malkandi's admission unlawful. *Kyong Ho Shin* is of particular relevance here. The court stated:

> The Shins' arguments that they were lawfully admitted for permanent residence despite their mother's status do not persuade us. Although the facts of both *Monet* and *Koloamatangi* involve acts of personal fraud or misrepresentation, their holdings broadly deem all grants of LPR status that were not in substantive compliance with the immigration laws to be void ab initio.

*Id*. at 1217. Petitioner distinguishes *Kyong Ho Shin* on the basis that the Shins were never accorded refugee status. However, it does not follow that Petitioner's admission as a refugee was lawful just because she was accorded refugee status. Her admission derived from a fraudulently obtained application and was thus never lawful. Her adjustment to LPR status was granted because of her refugee status—not because an independent assessment was made about the lawfulness of her admission to the country.

Therefore, because Petitioner did not qualify for refugee status at the time she obtained it, she was also not entitled to adjust her status to a lawful permanent resident pursuant to INA § 209(a); 8 U.S.C. §1159(a). Even though Petitioner was, and still may be, facially and procedurally a permanent resident, she was not in a legal sense lawfully admitted for permanent residence because she cannot prove that she was otherwise entitled to admission as a refugee at the time of entry. Consequently, Petitioner failed to meet the statutory requirements for naturalization under 8 U.S.C. § 1427(a)(1) and 8 C.F.R. § 316.2(a)(2)-(3) as she is not a lawful permanent resident within the meaning of 8 U.S.C. § 1101(a)(20). Thus, Petitioner's naturalization application was properly denied.

The Court recognizes that the end result in this case is inequitable at best. Petitioner likely experienced a great level of confusion and anxiety over being denied access to naturalization despite multiple attempts to properly qualify. Much could have been done to clarify Petitioner's status, re-grant her LPR status if necessary, and approve her application for naturalization years ago. The Respondent dispassionately points out that Petitioner "has another

1  path to citizenship" as "[s]he can file an I-485 Adjustment of Status application based on her
2  asylee status (granted in 2006 by the IJ)." Dkt. # 24, p. 17. Indeed, Petitioner can convert her
3  current status to that of a lawful permanent resident, wait out the required time (five years), and
4  then reapply for naturalization. The Respondent even acknowledges that Petitioner followed its
5  suggestion; she reapplied for an adjustment of status two years ago. "Petitioner has submitted
6  two I-485 Applications to Adjust Status; one in November 22, 2010 and one on December 6,
7  2010. *Both of these applications were rejected by USCIS because of a coding error in their*
8  *computer system at the time*." Dkt. # 24, p. 18. Absurdly, Ms. Malkandi was once again denied
9  the path to citizenship. USCIS accepted its mistake and agreed to expedite Petitioner's I-485
10 application when she decides to reapply for the *third* time. USCIS has the authority to expedite
11 all future applications submitted by Ms. Malkandi. It should take the opportunity to exercise its
12 authority in this case.

## IV. CONCLUSION

Having reviewed Petitioner's motion for summary judgment (Dkt. # 18), Respondent's cross-motion for summary judgment (Dkt. # 24), the response and replies thereto, and the remainder of the record, the Court hereby finds and **ORDERS**:

1. Petitioner's Motion for Summary Judgment (Dkt. # 18) is DENIED;
2. Respondent's Cross-Motion for Summary Judgment (Dkt. # 24) is GRANTED;

//

//

//

//

//

3. The Clerk is directed to forward a copy of this Order to Petitioner and to all counsel of record.

DATED this 20th day of December 2012.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE